**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated, | ) | 1:13-cv-6923 |
| Plaintiff, | ) | |
| | ) | Judge Pallmeyer |
| v. | ) | Magistrate Judge Finnegan |
| | ) | |
| JTH TAX, INC. d/b/a LIBERTY TAX SERVICE, | ) | |
| Defendant. | ) | JURY DEMANDED |
| | ) | |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Aimed at preserving cell phone privacy, the federal Telephone Consumer Protection Act, 47 U.S.C §227(b)(1)(A)(iii) ("TCPA"), prohibits autodialed calls to cell phones. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 744 (2012). Although other provisions of the TCPA were designed to prohibit telemarketing, specifically, this paragraph casts a wide net and bans all automated calls to cell phones "regardless of the content of the call…" *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 23 FCC Rcd. 559, 565; ¶11 (Jan. 4, 2008). ("In re TCPA 2008").

Plaintiff, who has a tax preparation business, received three phone calls on his cell phone advertising JTH, Tax, Inc. d/b/a Liberty Tax Service ("Liberty") in June and July 2013. Plaintiff answered all three calls, but as to the first two he was greeted with "dead air" on the other end of the call. That is to say, there was no person on the other end; only silence before the call terminated. On the third, plaintiff was greeted with a three second pause and then a live operator came onto the line and made a sales pitch for Liberty products and/or services.

Liberty moves to dismiss, arguing that plaintiff's allegations that it used an automatic telephone dialing system ("ATDS") are insufficient under *Twombly/Iqbal*. Liberty also claims that the complaint should be dismissed because, in its view, the TCPA only prohibits random telemarketing, and not targeted telemarketing. As Liberty posits, telemarketing must be "random" or "sequential" in order to be covered. Finally, Liberty argues that plaintiff's allegation that the calls from Liberty were placed negligently should be stricken. As explained herein, Liberty is wrong, and the motion to dismiss should be denied.

## I. <u>Facts Alleged in the Complaint</u>

JTH Tax, Inc. d/b/a Liberty Tax Service or some third party authorized to do so on its behalf used an automatic telephone dialing system to call plaintiff and the class. Cmplt. ¶8.

The first call came on June 12, 2013, at approximately 3:05 P.M. C.S.T. from caller ID 630-300-0362. Plaintiff answered, but there was only dead air on the other end of the line. Cmplt. ¶9. The second call was on June 21, 2013, at approximately 3:40 P.M. C.S.T. from the same caller ID: 630-300-0362. Plaintiff answered, but again there was only dead air on the other end of the line. Cmplt. ¶10.

On July 17, 2013 at 10:24 A.M defendant for a third time called plaintiff's cell phone from caller ID 630-300-0362. Cmplt. ¶11. When plaintiff answered there was an approximately 3 second pause before plaintiff heard a male voice against the background of a call center. Cmplt. ¶12. The person on the line told plaintiff that his name is Rob Lee, and that he was calling from Liberty Tax Service. Cmplt. ¶13.

Mr. Lee then said that Liberty Tax Service was reaching out to tax business owners to help them grow their tax businesses. Cmplt. ¶14. Mr. Lee asked if plaintiff would like to receive

a call from a representative within 24 hours to provide additional information regarding this opportunity. Cmplt. ¶15. Mr. Lee stated he was calling from Long Island, New York. Cmplt. ¶16.

Plaintiff asked him where Liberty Tax Service obtained his information and Mr. Lee said he wasn't sure but that his computer indicated plaintiff's company name, address and phone number. Cmplt. ¶17. Mr. Lee told plaintiff that he had been with Liberty Tax Service for 24 years. Cmplt. ¶18. Upon information and belief, the call to plaintiff's cell phone was made as part of a series of calling campaigns, consisting of thousands of calls. Cmplt. ¶19.

Plaintiff did not consent to this call. He has never done any business with Liberty, and never provided his telephone number to Liberty. Cmplt. ¶20. The defendant's calls were negligent, or alternatively, they were willful or knowing. 47 U.S.C. §227(b)(3). Cmplt. ¶21.

## II. __Motion to Dismiss Standard__

To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. There must be sufficient facts set forth in the complaint to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Id*. at 570. For purposes of Rule 12 motion to dismiss, the Court takes all facts alleged in the complaint as true, and construes those facts liberally taking reasonable inferences in the light most favorable to the plaintiff. *Id*. at 555–56.

3

III. **The Telephone Consumer Protection Act**

    A. <u>History and Purpose of the TCPA</u>.

Advances in telecommunications technology have provided benefits to American society. But those benefits are not cost-free; new technologies bring with them new ways to intrude upon privacy and waste time and money. The 1980s and 90s brought an explosion of abuses of telephone and facsimile technology, including the use of autodialers to clog telephone lines with unwanted calls, "robocalls" that leave unsolicited or unwanted, telemarketing messages, and "junk faxes" that consume the recipients' paper and ink and interfere with the transmission of legitimate messages. These abuses continue to expand with new technologies, such as text messaging.

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 744 (2012). In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, § 11.

Toward this end, Congress found that,

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion,

Id. at § 12; cited in *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012). Congress also specifically found that,

> the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call....

*Id*. at §§ 12-13. See also, *Mims*, 132 S.Ct. at 744. Judge Easterbrook stated it this way:

> The Telephone Consumer Protection Act (TCPA or "the Act"), 47 U.S.C. § 227, is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir.2012).

### B.   The Hobbs Act: An Unusual Statutory and Regulatory Framework.

Congress granted substantial authority to the Federal Communications Commission to issue regulations and final orders as to calls made to cellular telephones like the ones at issue in this litigation. 47 U.S.C. § 227(b)(2)(C). Typically, federal agency regulations are subject to review by a federal District Court pursuant to the familiar Chevron deference test. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010), citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

However, because of the Administrative Orders Review Act, also known as the "Hobbs Act," properly entered final orders by the FCC are not reviewable by any Court other than through an action against the FCC that originates in the United States Court of Appeals (except the Federal Circuit), or through a motion for reconsideration to the FCC itself.  28 U.S.C. 2342.

The Hobbs Act creates a situation where regulations and final orders "trump" a statute ... even if they are contrary to the statutory text itself. *Leckler v. Cashcall, Inc*., 554 F.Supp.2d 1025 (N.D.Cal. 2009) vacated, 2008 WL 5000528  (N.D.Cal. Nov.21, 2008). No collateral attacks on FCC orders are permitted; only direct attacks are allowed, and only through the administrative

review process. *Id.* In sum, FCC final orders are the "law of the land," and are not reviewable by any court, other than through the process laid out in the Hobbs Act.

        C.   <u>Automatic Telephone Dialing System and the FCC.</u>

Pursuant to its authority in 47 U.S.C. §227(b)(2)(C) and the Hobbs Act, the FCC has performed substantial factfinding and decisionmaking as to the TCPA since when the statute was signed into law by President George H.W. Bush on December 20, 1991.[1] One issue about which the Commission has exercised substantial rulemaking is what constitutes an "automatic telephone dialing system" ("ATDS") pursuant to the TCPA. In interpreting what constitutes an ATDS the Commission has consistently "emphasized" that that the definition of an ATDS covers any equipment that has the *capacity* to dial numbers without human intervention. *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F.Supp.2d 723, (N.D.Ill. 2011); *Soundbite TCPA Order*, 15 FCC Rcd. 15,391, fn. 5 (Nov. 26, 2012); *ACA International TCPA Ruling*, 23 FCC Rcd 559, 566 ¶13 (Jan. 4, 2008); *2003 TCPA Order,* 18 FCC Rcd. 14014, 14092; ¶132-33 (July 5, 2003).

In each of the above-cited rulings, the Commission indicated that this broad definition was necessary to prevent telemarketers and other persons from attempting to circumvent the TCPA. In 2003, the Commission stated:

> We believe the purpose of the requirement that equipment have the "capacity to store or produce telephone numbers to be called" is to ensure that the prohibition on autodialed calls not be circumvented. Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" and the intent of Congress.

---

[1] Copies of official requests for public comment, and major "final orders" issued by the FCC are available at http://transition.fcc.gov/cgb/policy/telemarketing.html.

2003 TCPA Order, 18 F.C.C.R. at 14092-93, ¶ 134. In its 2008 ruling, the Commission rejected arguments urging a narrowed definition of ATDS (like that which Liberty urges) based upon a technical reading of 47 U.S.C., §227(a)(1):

> [T]o find that calls to emergency numbers, health care facilities, and wireless numbers are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls.

*2008 TCPA Order*, 23 FCC Rcd. at 566, ¶14. More recently, in the *Soundbite* ruling, the Commission found the following, which is consistent with its previous rulings:

> Under the TCPA, the term "automatic telephone dialing system" or "autodialer" is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1). The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092, para. 133 (2003) (2003 TCPA Order).
>
> The Commission has, for example, concluded that the scope of that definition encompasses "hardware [that], when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," in light of, among other things, its conclusion that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." *Id*. at 14091-93, paras. 131, 133.

*Soundbite TCPA Ruling*, 15 FCC Rcd. 15391 at ¶2, n.5. These rules have not changed in more than ten years, and the Court is not free to change them now; particularly where the party seeking a change wishes to use the proffered equipment for telemarketing purposes.

IV. **The Motion to Dismiss Should be Denied.**

a. <u>There is No Requirement that Calls be Random.</u>

According to Liberty, its representative's statement during one of the calls at issue that Liberty was "reaching out to tax business owners" subjects this entire case to dismissal. Cmplt. ¶14. This position is based upon Liberty's reading of 47 U.S.C. §227(a)(1)'s definition of ATDS to say that the TCPA does not protect individuals from targeted telemarketing; only calls made randomly or sequentially are prohibited. Liberty is wrong.

First, this argument should be rejected because it would eviscerate the protections the TCPA was designed to create. "Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). A similarly exculpatory argument was rejected in a previous TCPA class action against this same defendant with strong language:

> [T]he office of all the Judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief, and *pro privato commodo*, and to add force and life to the cure and remedy, according to the true intent of the makers of the Act, *pro bono publico*.

*Davis, Keller, Wiggins, LLC. v. JTH Tax, Inc.*, 2001 TCPA Rep. 1040, 2001 WL 36107698 (Mo. Cir. Aug. 28, 2001) (quoting *Heydon's Case*, 3 Co. Rep. 7a, 7b; 76 Eng. Rep. 637, 638 (1584)). This Court should rule similarly.

Second, as explained above, the Commission has repeatedly held that any equipment that has the capacity to dial numbers without human intervention constitutes an ATDS. *Griffith*, 838 F.Supp.2d at 723. Thus, Liberty's "targeted marketing" argument misses the mark. It is the capacity of the equipment that the TCPA focuses on, rather than in what order numbers are dialed. As explained below, the complaint clearly alleges that Liberty used a predictive dialer that had the requisite capacity under the TCPA.

There is simply no requirement under the TCPA that calls be "random" or "sequential" to violate the Act. The motion to dismiss should be denied.

> b.  The Complaint Alleges Facts which Place
>      Liberty on Fair Notice of Plaintiff's Claims.

The allegations in the complaint state a claim for relief under the TCPA. First, the complaint alleges that defendant used an ATDS to call plaintiff. Cmplt. ¶8. This alone is sufficient to place defendant on fair notice of the claims against it and to state a claim for relief. *Hashw v. Department Stores Nat. Bank*, __ F.Supp.2d __, 2013 WL 6184048, at * 3 (D.Minn. Nov. 26, 2013) ("Here, Hashw has pleaded that an ATDS was used to make the calls to his cellular phone. As the Court must accept that allegation as true at this juncture, nothing more is required to state a claim for relief under the TCPA.").

Second, the specific factual allegations in the complaint are sufficient to infer that a predictive dialer with sufficient capacity was used to make the calls at issue. There were three unsolicited calls made to plaintiff by or on behalf of Liberty, each with the same caller ID. Cmplt. ¶¶9-11. Plaintiff answered all three, but was greeted with "dead air" during the first two. *Id*. "Dead air" is a term of art as used by the FCC when referring to a particularly pernicious side effect of ATDS/predictive dialer use:

9

The record in this proceeding is replete with examples of consumers that receive numerous unwanted calls on a daily basis. The increase in the number of telemarketing calls over the last decade combined with the widespread use of such technologies as predictive dialers has encroached significantly on the privacy rights of consumers. For example, the effectiveness of the protections afforded by the company-specific do-not-call rules have been reduced significantly by dead air and hang-up calls that result from predictive dialers.

****

In the 2002 Notice, the Commission noted that various technologies are widely used by telemarketers to contact greater numbers of consumers more efficiently. We explained that the use of one such technology–predictive dialing software–may result in a significant number of abandoned calls.

Predictive dialers initiate phone calls while telemarketers are talking to other consumers and frequently disconnect those calls when a telemarketer is unavailable to take the next call. In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

Predictive dialers reduce the amount of down time for sales agents, as consumers are more likely to be on the line when the telemarketer completes a call. Each telemarketing company can set its predictive dialer software for a predetermined abandonment rate.[FN503] The higher the abandonment rate, the higher the number of hang-up calls.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18

FCC Rcd. 14014, 14035, 14101-102 ¶ 28 (Jul 3, 2003) (paragraph breaks supplied). The "dead

air" on Liberty's end of these calls strongly supports an inference that a predictive dialer was

used to make the calls. After all, if a human being (rather than a predictive dialer) had made the

calls, that person would have been available to talk to plaintiff when he answered.

The third call further supports the inference that an ATDS was used. When plaintiff

answered, there was a three second pause before a voice came onto the other end of the line.

Cmplt. ¶ 12. This type of pause has been the subject of significant consideration by the FCC ten

years ago, when it instituted the "Two-Second-Transfer Rule:"

10

To address the problem of "dead air" produced by dialing technologies, the Commission has determined that a call will be considered abandoned if the telemarketer fails to connect the call to a sales representative within two (2) seconds of the person's completed greeting.

*In re TCPA 2003 Order*, 18 FCC. Rcd. 14014, 14106, ¶153 (Jul. 3, 2003). The voice that came on to the call plaintiff received had a busy "call center" background, and the representative claimed no personal knowledge of Liberty's dealings with plaintiff. Cmplt. ¶¶12, 17. Indeed, when pressed about where Liberty got plaintiff's phone number, the representative blamed the exchange on his *computer*, which suggests minimal human involvement in the calling process. Cmplt. ¶17. The complaint also alleges that the calls were made as part of a series of campaigns, consisting of thousands of calls. Cmplt. ¶19.

This case is therefore akin to cases where Courts have taken reasonable inferences based upon facts alleged, to hold that complaints stated claims for TCPA violations.

- *Strickler v. Bijora, Inc.*, No. 11C3468, 2012 WL 5386089, at *2 (N.D. Ill. Oct. 30, 2012) (inferring that a text message was sent by an ATDS because of allegation that it was sent *en masse*, in voluminous number with generic content);

- *Hickey v. Voxernet LLC*, 887 F.Supp.2d 1125, 1130 (Aug. 13, 2012) (Plaintiff's allegation regarding the generic content and automatic generation of the message sufficient to infer the use of an ATDS);

- *Martin v. Leading Edge Recovery Solutions, LLC*, No. 11C5886, 2012 WL 3292838, *4 (N.D. Ill. Aug. 10, 2012) (complaint attached a Public Utility Commission of Texas submission regarding defendant's dialer);

- *Torres v. NES, Inc.*, No. 12-2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (allegations that an "automatic telephone dialing system or an artificial or prerecorded

11

voice" was used were sufficient because it would not be "reasonable to hold plaintiffs in TCPA cases to the standard proposed by [defendant] since it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail. Under such a standard, defendants such as NES would be virtually immune to TCPA claims, which clearly is not what was intended by Congress in creating the TCPA.");

- *Connelly v. Hilton Grand Vacations Co.*, LLC, 2012 WL 2129364, at *4 (S.D. Cal. June 11, 2012) (allegation that there was a pause at the beginning of calls sufficient to plausibly suggest use of an ATDS);

- *Vance v. Bureau of Collection Recovery, LLC*, 2011 WL 881550, at *2 (N.D. Ill. Mar. 11, 2011) (allegations that defendant used a "predictive dialer" sufficient to state a claim);

- *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165,1171 (N.D.Cal.2010) (read complaint "as a whole" and found that allegations that tracked the statutory language, plus allegations that "explained" the text messages sufficient to state a plausible claim for relief).

The only TCPA cases cited by Liberty in support of its *Twombly/Iqbal* argument, *Knutson v. Reply!, Inc*., No. 10cv1267, 2011 WL 1447756, at *1 (S.D.Cal. Apr. 13, 2011), and *Abbas v. Selling Source, LLC*, 2009 WL 4884471 (N.D.Ill. Dec. 14, 2009) support plaintiff's position. *Knutson* denied a motion to dismiss, based upon plaintiff's allegations that there was no person on the other end of the calls to him, until he heard "the line click over" to an operator. *Id*. at *1. This allegation is substantively identical to paragraph 12, where plaintiff alleges that there was a pause before plaintiff heard an operator, and similar to the allegations in paragraphs 9 and 10, which allege dead air.

12

Judge Gottschall in *Abbas* granted a motion to dismiss with leave to replead in a TCPA text message case, holding that although the complaint put defendant on fair notice of the first text message plaintiff received, it did not adequately identify other allegedly illegal text messages other than to say that they were "numerous." *Id*. at. *2. In contrast, the complaint in this action specifies the date and time of each of the calls of which plaintiff is aware, and describes what happened on each call. In sum, the complaint gives Liberty fair notice of the claims against it, and the motion to dismiss should be denied.

### c. There is No Reason to Strike the word "Negligent" from the Complaint.

As this Court held nearly five years ago, "[t]he TCPA is a strict liability statute, but the court has discretion to award treble damages for a willful or knowing violation of 47 U.S.C. 227(b)." *CE Design Ltd. v. Prism Business Media, Inc*., 2009 WL 2496568, at *3 (N.D.Ill. Aug. 12, 2009). Given this, it is difficult to understand the final paragraph of Liberty's motion to dismiss, which attacks plaintiff's single use of the word "negligent" in his complaint. Cmplt. ¶24.

As explained by Liberty, because the statutory language of the TCPA does not include the word "negligence," the single utterance of this word that appears in the complaint should be stricken. Liberty is wrong.

Fed.R.Civ.P. 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The motion to strike, which does not cite or mention Rule 12(f), does not claim the complaint is any of these things. Instead, Liberty claims that the complaint's single use of the word "negligent" is impermissibly "conclusory," and in any event should be stricken because it "does not fit into the TCPA scheme."

But there is no prohibition against using a word in a complaint that is absent from a statute. All the Rules require is that a plaintiff give notice of what he claims the defendant did wrong. Use of the word "negligent" achieves this goal, albeit perhaps imperfectly: it acts as a foil to plaintiff's alternative allegation that Liberty's violations were intentional or willful.[2] In any event, Fed.R.Civ.P. 9(b) does not require any more than "general" allegations regarding a party's state of mind.

To be sure, plaintiff does not intend to abandon the strict liability standard. To the extent that the Court finds use of the word "negligent" to limit the factual circumstances within which plaintiff may obtain damages, plaintiff requests leave to replead to mention strict liability. But certainly the complaint, as written, is not subject to being stricken under the Federal Rules.

**CONCLUSION**

For the above reasons, the motion to dismiss should be denied.


Respectfully submitted,

/s/Alexander H. Burke


**BURKE LAW OFFICES, LLC**

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288

---

[2] To be sure, Liberty knew exactly what it was doing when it called plaintiff. It has been sued at least twice previously under the TCPA. *Davis, Keller, Wiggins, LLC. v. JTH Tax, Inc.*, 2001 TCPA Rep. 1040, 2001 WL 36107698 (Mo. Cir. Aug. 28, 2001), see also Chaturvedi v. JTH Tax, Inc. d/b/a Liberty Tax Service, 2001 TCPA Rep. 1147 (Pa.C.P. Oct. 1, 2001) (preliminary approval of class settlement granted), Exhibit A.

(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Exhibit A

*Chaturvedi v. JTH Tax*, 2001 TCPA Rep. 1147 (Pa. C.P. Oct. 1, 2001)). | Page: 1

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| SHILESH CHATURVEDI and TIMOTHY FELKER, On Behalf Of All Persons Similarly Situated, | Civil Division |
| Plaintiffs, | No. GD-01-008851 |
| v. | CLASS ACTION |
| JTH TAX, INC. d/b/a LIBERTY TAX SERVICE. | |
| Defendant. | |

### PRELIMINARY APPROVAL ORDER APPROVING NOTICE OF PROPOSED SETTLEMENT AND SETTING SETTLEMENT HEARING DATE

This Court has received the Stipulation and Agreement of Compromise, Settlement and Release entered into by the parties, dated as of September *October 1st*, 2001 (the "Stipulation"), and having reviewed the Stipulation and its attached exhibits, and all parties having consented to the entry of this Order, and for good cause appearing, it is this 1ª day of October, 2001, HEREBY ORDERED AS FOLLOWS:

1.   The Court adopts and incorporates the definitions in the Stipulation and the Exhibits thereto for purposes of this Order.

2.   Solely for purposes of the Settlement, (a) the Action preliminarily shall be certified as a class action on behalf of a class (the "Class") comprised of all residents of the United States (other than JTH Tax, Inc. d/b/a Liberty Tax Service's officers, directors, franchisees, and employees) who received an unsolicited facsimile transmission sent by or on behalf of Liberty Tax Service at any time between September 12, 1996 and October 1, 2001 (the "Class Period"); (b) it is preliminarily found that Plaintiffs are adequately represented by counsel and that Plaintiffs and their counsel will fairly and adequately protect the interests of the Class; (c) Clayton S. Morrow, P.C. and Caldwell & Associates LLC are preliminarily certified as Counsel for the Class ("Class Counsel"); and, (d) the Court preliminarily approves the Settlement on the terms and conditions set forth in the Stipulation, subject to final approval

Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2003-2013. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

*Chaturvedi v. JTH Tax*, 2001 TCPA Rep. 1147 (Pa. C.P. Oct. 1, 2001)).                    | Page: 2

as set forth herein.

3.     The Court preliminarily finds that, among other things (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Class; (c) the claims of the representative parties are typical of the claims of the Class; and (d) the representative parties will fairly and adequately protect the interests of the Class.

4.     A hearing shall be held on January _17th_ 2002, at _9:00_ m. in the Court of Common Pleas of Allegheny County, Pennsylvania before the Honorable Judge Robert P. Horgos in Courtroom 816 City-County Building (the "Settlement Hearing") to determine (a) the fairness, reasonableness and adequacy of the Stipulation and the Settlement; (b) whether the Stipulation and the Settlement should be finally approved by the Court and judgment entered thereon dismissing the Action with prejudice and extinguishing and releasing all Settled Claims; (c) whether the Class should be finally certified; (d) any objections to the Settlement; and (e) such other matters as the Court may deem appropriate. At or prior to the Settlement Hearing, Class Counsel may apply for an award of counsel fees, expenses and an incentive award to Plaintiffs as set forth in Paragraph VIII & XII of the Stipulation, which application shall be heard by the Court at the Settlement Hearing or at such time thereafter as the Court deems appropriate.

5.     The Court reserves the right to adjourn the Settlement Hearing or any adjournment thereof, including consideration of the application for counsel fees and expenses, without further notice other than by oral announcement at the Settlement Hearing or any adjournment thereof.

6.     The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modifications as may be consented to by the parties to the Stipulation and without further notice to the Class.

7.     The Court approves the Notice to the Class (the "Notice") substantially in the form attached as Exhibit B to the Stipulation. Within twenty-five (25) days after the entry by the Court of the Preliminary Approval Order, the Claims Administrator and/or Liberty Tax Service shall cause the Notice of Class Action and of Proposed Settlement and Certificate ("Notice") substantially in the form attached hereto as Exhibit B, to be sent via facsimile transmission to every facsimile telephone number

Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2003-2013. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

that originally received the unsolicited facsimile transmissions. If Liberty Tax Service finds that it has a return of the Notices as undeliverable in excess of seven (7%) percent of the total sent, Liberty Tax Service will cause the Publication Notice, attached hereto as Exhibit C, to be published once in the national edition of <u>USA Today</u>, Monday -Thursday edition, 1/4 page size. Liberty Tax Service will cause the Publication Notice to be published as set forth herein, within ten (10) days following the twenty-five (25) day period allotted for transmission of the Notice. The cost of facsimile transmission Notice and the cost of publishing the Publication Notice to the Class will be paid by JTH Tax, Inc. d/b/a Liberty Tax Service.

8.    The Court finds that direct facsimile transmission of the Notice and publication of the Publication Notice to the Class, if necessary, in the form and manner set forth in paragraph 7 above constitutes the best notice practicable under the circumstances to all Class Members, and complies fully with all applicable laws, Rules and the United States Constitution. Liberty Tax Service shall, on or before the date of the Settlement Hearing directed herein, file proof of the facsimile transmission Notices to the Class and publication of the Publication Notice, if necessary, as set forth in paragraph 7 above.

9.    Any Class Member who objects to the Stipulation, the Settlement, the class action determination (including the determination of adequacy of representation), the Order and Final Judgment to be entered herein, and/or the application for counsel fees, expenses and/or the incentive award for the Plaintiffs, or who otherwise wishes to be heard, may appear in person or by his or her attorney at the Settlement Hearing and present any evidence or argument that may be proper and relevant; *provided, however,* that no person other than Plaintiffs, counsel for Plaintiffs, JTH Tax, Inc. d/b/a Liberty Tax Service and counsel for JTH Tax, Inc. d/b/a Liberty Tax Service in the Action shall be heard, and no papers, briefs, pleadings or other documents submitted by any such person shall be received and considered by the Court (unless the Court in its discretion shall thereafter otherwise direct, upon application of such person and for good cause shown), unless no later than twenty-one (21) days prior to the Settlement Hearing directed herein, (i) written notice of such person's intention to appear; (ii) a detailed statement of such person's objections to any matter before the Court; and (iii) the grounds therefore or the reasons why such person desires to appear and to be heard, as well as all documents and

Obtained from **TCPALAW**.COM The leading source for TCPA legal research

Copyright © 2003-2013. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

writings which such person desires the Court to consider, shall be filed by such person with the Clerk of

this Court and, on or before the date of such filing, shall be served upon the following counsel of record

by hand delivery, express overnight delivery, or first class mail, postage prepaid:

Clayton S. Morrow, Esquire
Clayton S. Morrow, P.C.
304 Ross Street
7th Floor, Mitchell Building
Pittsburgh, PA 15219
Class Counsel

James R. Schadel, Esquire
Weinheimer, Schadel & Haber
429 Fourth Avenue
602 Law and Finance Bldg.
Pittsburgh, PA 15219-1503
Attorney for Liberty Tax Service

10.    Any person who fails to object in the manner prescribed above shall be deemed

to have waived such objection and shall be forever barred from raising such objection in the Action or any

other action or proceeding.

11.    Any person who wishes to be excluded from the Class must do so as provided in

the Notice at least twenty-one (21) days prior to the Settlement Hearing. Any person who does not timely

request exclusion as provided in the Notice shall be included in the Class and bound by any Final

Judgment and Order entered in this Action by the Court.

12.    Pending final determination of whether the Stipulation should be approved and

the Class finally certified for settlement purposes, Plaintiffs and all members of the Class, and each of

them, and any of their respective representatives, trustees, successors, heirs and assigns, are barred and

enjoined from commencing or prosecuting any action asserting any claims, either directly,

representatively, derivatively or in any other capacity, which are or relate to the Settled Claims, against

any of the Released Persons. All proceedings in this Action, other than proceedings as may be necessary

to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further

order of the Court.

13.    If the Settlement provided for in the Stipulation shall be approved by the Court

following the Settlement Hearing, an Order and Final Judgment shall be entered as described in the

Stipulation.

14.    If the Stipulation is not approved by the Court or is terminated or shall not

**Obtained from**
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2003-2013. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

become effective for any reason whatsoever, the Action shall proceed, completely without prejudice to any party as to any matter of law or fact (including, without limitation, the appropriateness of the certification of the Class) as if the Stipulation had not been made and had not been submitted to the Court, and neither the Stipulation, nor any provision contained in the Stipulation nor any action undertaken pursuant thereto, nor the negotiation thereof by any party, shall be deemed an admission or offered or received in evidence at any proceeding in the Action or any other action or proceeding.

     15.      The Parties shall file Briefs in Support of the Settlement and Application for Award of Attorney Fees and Expenses within ten (10) days of the Settlement Hearing.

SO ORDERED:

DATED *October 1, 2001*      *Robert P. Horgos*
     Honorable Robert P. Horgos

Presented By:

**CLAYTON S. MORROW, P.C.**
Clayton S. Morrow
PA I.D. No: 53521
304 Ross Street, 7th Floor
Pittsburgh, PA 15219
(412) 281-1250

**CALDWELL & ASSOCIATES LLC**
Ann M. Caldwell
PA I.D. No: 42252
159 Old Belmont Avenue
Bala Cynwyd, PA 19004
(610) 668-8600

**ATTORNEYS FOR PLAINTIFFS AND THE CLASS**

**WEINHEIMER, SCHADEL & HABER**
James R. Schadel, Esquire
PA I.D. No: 27937
429 Fourth Avenue
602 Law and Finance Bldg.
Pittsburgh, PA 15219-1503
(412) 765-3399

**ATTORNEYS FOR DEFENDANT**

Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2003-2013. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

*Chaturvedi v. JTH Tax*, 2001 TCPA Rep. 1147 (Pa. C.P. Oct. 1, 2001)). | Page: 6

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| SHILESH CHATURVEDI, and | ) | CIVIL DIVISION |
| TIMOTHY FELKER, | ) | |
| on behalf of themselves | ) | |
| and all others similarly situated, | ) | No. GD-01-008851 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JTH TAX, INC. d/b/a | ) | |
| LIBERTY TAX SERVICE, | ) | |
| Defendant. | ) | |

### ORDER OF COURT

On this __20th__ day of November 2001, upon consideration of the Plaintiffs' Emergency Motion for Approval of Transmission of Supplemental Notice, Kenro, Inc.'s Response thereto, and the subsequent report of agreement by counsel for the parties and Kenro, Inc., it is hereby ordered that the defendant shall send via facsimile transmissions, between November 17, 2001 and November 26, 2001, to all numbers which previously had received the facsimile transmission, the following one (1) page Supplemental Notice which is attached hereto as Exhibit "A". The defendant may (but is not required to) delete from the Supplemental Notice any recipient of the prior notice who requested that no further notices be sent to them. The defendant shall honor all Certificates contained in both the Initial and Supplemental Notices. The defendant shall provide confirmatory financial affidavit to the satisfaction of class counsel. Cohen & Malad, PC is hereby appointed co-lead counsel in this matter along with Clayton S. Morrow, PC and Caldwell & Associates, LLC. All the parties have agreed to the submission of the Supplemental Notice as provided in Exhibit "A".

The defendant may publish the Publication Notice, as set forth in the October 1, 2001 Preliminary Approval Order, on November 5, 2001.

BY THE COURT:

_Robert P. Horgos_

ROBERT P. HORGOS, J

Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2003-2013. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.