**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of himself and others similarly situated, | ) ) ) | Case No. 1:13-cv-06923 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JTH TAX, INC. d/b/a LIBERTY TAX SERVICE, | ) ) | Hon. Judge Manish S. Shah Hon. Mag. Judge Sheila M. Finnegan |
| Defendant. | ) | |

**UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**INCENTIVE AWARD IN CONNECTION WITH THE SETTLEMENT**

**TABLE OF CONTENTS**

Page

I.     <u>BACKGROUND – THE SETTLEMENT</u>................................................................ 2

II.     <u>SEVENTH CIRCUIT STANDARD FOR COMMON FUND FEE AWARDS</u>............................... 2

III.     <u>ARGUMENT</u>.......................................................................................... 5

       A.     <u>Class Counsel's Requested Fee Award Is Reasonable.</u>.......................................... 5

            1.     <u>The Requested Fee Is Presumptively Reasonable.</u> ..................................... 5

            2.     <u>The Requested Fee Is in Line with the Market Rate.</u> ................................. 6

                *i.*     *In re Capital One TCPA Case Analysis*.............................................. 6

                *ii.*     *The risk associated with this litigation justifies the requested fee award of one-third of the common fund or approximately 37% of the anticipated realized benefit to the Settlement Class.*............... 9

                *iii.*     *The requested fee comports with the contract between Plaintiff and Counsel, and the typical contingency fee agreements in this Circuit.* ........................................................................ 13

                *iv.*     *The quality of Class Counsel's performance, work invested, and stakes of the litigation further support the requested fee award.* 15

       B.     <u>The Incentive Awards to the Class Representative Should Be Approved.</u>......... 17

IV.     <u>CONCLUSION</u> ...................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

### Appellate Court Cases

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*,
    743 F.3d 243 (7th Cir. 2014) ................................................................ 3

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ........................................................................... 3

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) .......................................................17, 18

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) .............................................................4, 9

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ............................................................ 13

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ............................................................. 4

*In re Synthroid Mkt. Litig.* ("*Synthroid I*"),
    264 F.3d 712 (7th Cir. 2001) ........................................... 2-3, 5, 13, 17

*In re Synthroid Mktg. Litig.* ("*Synthroid II*"),
    325 F.3d 974 (7th Cir. 2003) ............................................................ 7

*In re Trans Union Corp. Privacy Litig.*,
    629 F.3d 741 (7th Cir. 2011) ............................................................ 7

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ..........................................................9, 13

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ............................................................ 6

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ............................................................ 6

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) ............................................................ 9

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ...............................................................3, 5, 9, 15

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ...........................................................................5, 13

**District Court Cases**

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
    No. 08-248, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012)........................................... 5

*Balschmiter v. TD Auto Fin. LLC*,
    303 F.R.D. 508 (E.D. Wis. 2014) ....................................................................... 11

*Benzion v. Vivint, Inc.*,
    No. 12-61826, Dkt. No. 201 (S.D. Fla. Feb. 23, 2015) ..................................... 18

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014)......................................................................... 11

*CE Design Ltd. v. CV's Crab House North, Inc.*,
    No. 07-05456, Dkt. No. 424 (N.D. Ill. Oct. 27, 2011)........................................ 14

*CE Design, Ltd. v. Exterior Sys., Inc.*,
    No. 07-00066, Dkt. No. 39 (N.D. Ill. Dec. 6, 2007) ........................................... 14

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
    No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015),
    *reconsideration denied*, 2015 WL 2147679 (N.D. Ill. May 6, 2015) ................... 8

*Cummings v. Sallie Mae*,
    No. 12-9984, Dkt. No. 91 (N.D. Ill. May 30, 2014) ........................................... 14

*Desai v. ADT Security Servs., Inc.*,
    No. 11-1925, Dkt. No. 243 (N.D. Ill. Feb. 27, 2013) ....................................14, 18

*Donaca v. Dish Network, LLC*,
    303 F.R.D. 390 (D. Colo. 2014) ......................................................................... 12

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) ....................................................................... 4

iii

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
No. 07-05953, Dkt. No. 146 (N.D. Ill. Nov. 1, 2010) ........................................................ 14

*Green v. DirecTV, Inc.*,
No. 10-117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) .................................................... 12

*Gusman v. Comcast Corp.*,
298 F.R.D. 592 (S.D. Cal. 2014) ........................................................................................ 16

*Heekin v. Anthem, Inc.*,
No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ............................................ 18

*Hinman v. M&M Rentals, Inc.*,
No. 06-1156, Dkt. No. 225 (N.D. Ill. Oct. 6, 2009) ........................................................... 14

*Holtzman v. CCH Inc.*,
No. 07-07033, No. 33 (N.D. Ill. Sept. 30, 2009) ............................................................... 14

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
792 F. Supp. 2d 1028 (N.D. Ill. 2011) ............................................................................... 12

*In re Capital One TCPA Litig.* (*"In re Capital One"*),
No. 11-5886, 2015 WL 605203 (N.D. Ill. Feb. 12, 2015) ............................................ 4, 6-8

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
No. 09-7670, 2011 U.S. Dist. LEXIS 157910 (N.D. Ill. Nov. 30, 2011) ............................ 3-4

*In re Southwest Airlines Voucher Litig.*,
No. 11-8176, 2013 WL 4510197 (N.D. Ill., Aug. 26, 2013) ............................................... 18

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ..................................................................................... 4

*Jamison v. First Credit Servs.*,
290 F.R.D. 92 (N.D. Ill. 2013) .....................................................................................11, 12

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) .......................................................................................... 13

*Martin v. Dun & Bradstreet, Inc.*,
No. 12-00215 (N.D. Ill. Jan. 16, 2014) .......................................................................13, 14

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
No. 08-05959, Dkt. No. 116 (N.D. Ill. Dec. 21, 2011) ...................................................... 14

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP,*
No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ................................................. 13

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.,*
No. 09-0776, Dkt. No. 100 (N.D. Ill. Jan. 14, 2011) ........................................................ 14

*Saf-T-Gard Int'l v. Vanguard Energy Servs.,*
No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ................................................. 11

*Steinfeld v. Discover Fin. Servs.,*
No. 12-01118, Dkt. No. 96 (N.D. Cal. Mar. 10, 2014) ........................................................ 5

*Stumpf v. PYOD,*
No. 12-4688, 2013 WL 6123156 (N.D. Ill. Nov. 20, 2013) ................................................ 13

*Wilkins v. HSBC Bank Nev., N.A.,*
No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ...................................................... 8

*Will v. Gen. Dynamics Corp.,*
No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)................................................... 18

*Williams v. Gen. Elec. Capital Auto Lease,*
No. 94-7410, 1995 WL 765266 (N.D. Ill. Dec. 26, 1995) ............................................... 3-4

## Statutes

47 U.S.C. § 227 ...................................................................................................................... 1

## Regulatory Materials

In re Rules & Regs. Implementing the TCPA, Order
CG Dkt. No. 02-278 (released Oct. 30, 2014) (available at http://transition.fcc.gov/
Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf) ........................... 11-12

In re Rules & Regs. Implementing the TCPA, Declaratory Ruling & Order
CG Dkt. No. 02-278 (released July 10, 2015) (available at https://apps.fcc.gov/
edocs_public/attachmatch/FCC-15-72A1.pdf) ............................................................... 12

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits making automated telephone calls to cellular telephones without the "prior express consent" of the recipient. This case alleges that Defendant JTH Tax, Inc., d/b/a Liberty Tax Services ("Liberty"), caused such calls to be made to plaintiff and others associated with approximately 291,000 cellular telephone numbers, nationwide. Liberty adamantly denies that it did anything wrong.

After over a year and a half of litigation, extensive discovery with Liberty and third parties (including a subpoena enforcement action filed in the Southern District of New York), a full-day mediation with the Honorable Morton Denlow (Ret.) and additional, protracted settlement discussions, the parties reached a proposed class action settlement, which this Court preliminarily approved on May 7, 2015. (DE 69.) The settlement generally calls for a lump-sum, common fund of $3,000,000 for the benefit of the Settlement Class. Pursuant to the Court-approved notice plan, notice and claim forms were mailed to the Settlement Class on June 16, 2015, with an exclusion and objection deadline of August 5, 2015, a claim submission deadline of August 15, 2015, and the final approval hearing set for September 16, 2015. (DE 69, at pp. 7-8.) To date, only one class member has objected to the settlement.[1]

Plaintiff respectfully requests that the Court approve attorneys' fees of $1,000,000 and actual out-of-pocket costs of $7,486.14, as well as a $20,000 service award for the named plaintiff. As explained below, the requested fee amount is in line with the market rate for

---

[1]    Lewis C. Taishoff (DE 72) appears to simply be opposed to class actions generally, and challenges the basis for the requested fee and service award and suggests that class notice should have disclosed that the settlement benefits are taxable as income. (DE 72.) While, as discussed herein, there is substantial case law and precedent supporting the requested fee and service awards, Plaintiff will be responding to all objectors' concerns directly in his motion for final approval of the settlement.

similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested service award is comparable to other TCPA cases, and should be approved.[2]

## I.    BACKGROUND – THE SETTLEMENT

The settlement generally requires Liberty to pay an amount of $3,000,000, which will be paid on a *pro rata* basis to Settlement Class Members who submit valid claim forms, after payment of administration costs, awarded attorneys' fees and costs, and any incentive award to the class representative.  (Settlement Agreement ("Agr.") ¶ II.4.)  The settlement is completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. (Agr. ¶ II.9.) Notice and administration through Dahl Administration is expected to cost approximately $288,000, which breaks down to about $200,000 for the notice plan, and the remainder to receive and effectuate payment to claimants. If 8% of the Settlement Class submit valid claims and the Court approves the requested attorneys' fees, costs, and service award, Settlement Class Members would be anticipated to receive approximately $72 each.[3]

## II.    SEVENTH CIRCUIT STANDARD FOR COMMON FUND FEE AWARDS

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."  *In re Synthroid*

---

[2]     This brief will be posted on the settlement website, https://secure.dahladmin.com/JTH.
[3]     ($3,000,000 fund - $288,000 class administration costs - $1,000,000 attorneys' fees - $7,486.14 in actual out-of-pocket costs - $20,000 incentive award) ÷ (approximately 291,000 Settlement Class Members x 8% claims rate) = $72.35

*Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at the start of the case: the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

In common fund cases, unlike fee-shifting cases, courts have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar. *See, e.g., Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "'[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class.'" *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-7670, 2011 U.S. Dist. LEXIS 157910, at *9

3

(N.D. Ill. Nov. 30, 2011) (quoting *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-7410, 1995

WL 765266, at *9 (N.D. Ill. Dec. 26, 1995)). "[T]here are advantages to utilizing the percentage

method in common fund cases because of its relative simplicity of administration." *Florin v.*

*Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994).

> The percentage method is bereft of largely judgmental and time-wasting
> computations of lodestars and multipliers. These latter computations, no matter
> how conscientious, often seem to take on the character of so much Mumbo
> Jumbo. They do not guarantee a more fair result or a more expeditious
> disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989);

*see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market

based contingency fee percentages than to "hassle over every item or category of hours and

expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D.

Ill. 1996) (percentage of fund method "provides a more effective way of determining whether

the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

The percentage-of-the-fund method should be used here. *See In re Capital One TCPA*

*Litig.*, No. 11-5886, 2015 WL 605203, at *10 (N.D. Ill. Feb. 12, 2015) (noting that "a fee

arrangement based on a percentage of the recovery ... [is] consistent with the normal practice

in consumer class actions"). Class Counsel and Plaintiff have created a $3 million non-

reversionary settlement fund that provides substantial, actual value to Settlement Class

Members. After deducting Class Administrator costs (estimated at $288,000),[4] the requested

$1,000,000 fee and actual out-of-pocket costs of $7,486.14, and the requested $20,000

incentive award for Plaintiff Martin, the remaining $1,684,513.86 will be used to pay cash

---

[4]     The current cost estimate for notice is higher than the $250,000 originally projected,
due largely to the number of claims continuing to be received.

awards directly to Settlement Class Members who file valid claims.  If the settlement were approved today at an 8% claims rate, each of the 23,280 claimants would receive approximately $72.  This amount is in line with, and indeed exceeds, amounts paid in other TCPA settlements. *See, e.g., Steinfeld v. Discover Fin. Servs.*, No. 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-248, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each).

**III.**     <u>**ARGUMENT**</u>

    **A.**     **<u>Class Counsel's Requested Fee Award Is Reasonable.</u>**

A district court determining attorneys' fees at the end of legal proceedings must do so by "approximating the terms that would have been agreed to *ex ante*, had negotiations occurred [at the outset]." *Synthroid I*, 264 F.3d at 719. Apart from gauging the overall market rate based on fees awarded in similar cases, *see Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005), the Seventh Circuit has held that the market price for legal fees "'depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.'" *Sutton*, 504 F.3d at 693 (quoting *Synthroid I*, 264 F.3d at 721). Considering the substantial risk of nonpayment and the normal rate of compensation in the market in similar TCPA class actions, the requested fee amount accurately reflects the *ex ante* market rate, and should be awarded by the Court.

    1.     <u>The Requested Fee Is Presumptively Reasonable.</u>

Recent Seventh Circuit decisions have clarified the analysis for considering an award of attorneys' fees. While fees derived using the percentage-of-the-fund approach in consumer

class actions had previously largely been calculated as a percentage of the settlement fund as a whole—including, for example, the costs of class notice and administration—the Seventh Circuit has instructed that "[t]he ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). The Court further clarified that the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

The requested fees fall well within this range of reasonableness. After subtracting the estimated $288,000 in Class Administrator costs, $7,486.14 out-of-pocket costs, and $20,000 requested incentive award, Class Counsel seek approximately 37% of the $2,684,513.86 remaining in the settlement fund. The requested fee is, therefore, presumptively reasonable.

2.     <u>The Requested Fee Is in Line with the Market Rate.</u>

The requested fee of one-third of the total settlement fund—or approximately 37% of the amount solely distributable to the Settlement Class and Class Counsel in fees—is at the market price, and therefore reasonable, as reflected in the fees approved by judges in this District in TCPA class cases, and considering the risks of non-payment, the quality and extent of Class Counsel's work on behalf of the Settlement Class, and the overall stakes of the case.

i.     *In re Capital One TCPA Case Analysis*

A recent decision from this District, *In re Capital One Telephone Consumer Protection Act Litig.* ("*In re Capital One*"), --- F. Supp. 3d ----, 2015 WL 605203 (N.D. Ill. Feb. 12, 2015) (Holderman, J.), is instructive as to how the *Redman/Pearson* fee analysis should be applied in

6

the context of a TCPA class settlement. In considering a proposed $75.5 million nationwide

TCPA class settlement involving more than 17 million class members, Judge Holderman

considered several studies—including one analyzing all 688 federal class action settlements in a

2-year period and others covering class settlements from 1993-2008—and conducted his own

extensive, empirical analysis of fee awards in over 70 approved TCPA class action settlements

since 2010. These studies and the court's independent findings revealed that, in TCPA class

settlements, fee awards are largely scaled based on the recovery, with the percentage fee

amount decreasing as the class recovery increases. *In re Capital One*, 2015 WL 605203, at *12.

　　With that analysis, the court then created a multi-tiered fee structure specific to the

TCPA, based upon the Seventh Circuit's opinion in *In re Synthroid Mktg. Litig.* ("*Synthroid II*"),

325 F.3d 974 (7th Cir. 2003), and found that the market rate for the first "tier" of up to $10

million of the aggregate class recovery was 30%, without accounting for risk:

| Recovery | Fee Percentage | Fee |
|---|---|---|
| First $10 million | 30% | $3,000,000 |
| Next $10 million | 25% | $2,500,000 |
| $20 – 45 million | 20% | $5,000,000 |
| Excess above $45 million ($30,455,099) | 15% | $4,568,265 |
| **Total Fee** | **19.97%** | **$15,068,265** |

*In re Capital One*, 2015 WL 605203, at *15 n. 13. Applying a risk assessment, as required by the

Seventh Circuit and as discussed below in relation to this case,[5] the court then included a risk

premium of an additional 6% to the first tier of up to $10 million:

| Recovery | Fee Percentage | Fee |
|---|---|---|
| First $10 million | 36% | $3,600,000 |

---

[5]　　*In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) ("[W]ithin the set of colorable legal claims, a higher risk of loss does argue for a higher fee.... [I]f the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million.").

| | | |
|---|---|---|
| Next $10 million | 25% | $2,500,000 |
| $20 – 45 million | 20% | $5,000,000 |
| Excess above $45 million ($30,455,099) | 15% | $4,568,265 |
| **Total Fee** | **20.77%** | **$15,668,265** |

*Id.* at *18.

This is the same tiered system that Judge Holderman applied in *Wilkins v. HSBC Bank Nev., N.A.*, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015), and which Judge St. Eve applied in *Craftwood Lumber Co. v. Interline Brands, Inc.*, 2015 WL 1399367 (N.D. Ill. Mar.  23, 2015), *reconsideration denied*, 2015 WL 2147679 (May 6, 2015), although without awarding a risk premium. All three decisions applied awarded attorneys' fees as a percentage of the total settlement fund, after ensuring that the *Redman/Pearson* reasonableness standard was satisfied based on the ratio of the fee to the fee plus what the class members would receive. *See, e.g., Craftwood Lumber Co.*, 2015 WL 1399367, at *5 n. 2 (approving fee award totaling 23.75% of total $40 million common fund, but noting that, under the *Redman* analysis, the fee "would actually be closer to 24% of the total recovered by the class").

Comparatively, this case involves a proposed $3 million settlement, of which Class Counsel seek one-third of the common fund—amounting to roughly 37% of the approximate $2,684,513.86 distributable to the Settlement Class after subtracting estimated Class Administrator costs of $288,000, actual out-of-pocket costs of $7,486.14, and the requested $20,000 incentive award. Applying Judge Holderman's analysis in *In re Capital One*, 30% of the aggregate class relief in settlements of $10 million or less accurately reflects the *ex ante* market rate in this case, without accounting for risk or considering the other factors expounded in *Synthroid I*.  As discussed below, Plaintiff respectfully suggests that a modest upward risk

adjustment of 3 ⅓% of the percentage of the common fund (or roughly 7% of the percentage of the amount of direct Settlement Class Member benefits), is appropriate.

> ii. *The risk associated with this litigation justifies the requested fee award of one-third of the common fund or approximately 37% of the anticipated realized benefit to the Settlement Class.*

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (internal quotations and citations omitted); *see also Sutton*, 504 F.3d at 694 (finding abuse of discretion where lower court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

In keeping with Judge Holderman's analysis in *In re Capital One*, Plaintiff respectfully suggests that a modest risk premium up to the requested $1,000,000 cap referenced in the class notice (3 ⅓% of the common fund or roughly 7% of the amount distributable to the Settlement Class), is appropriate in this case. Class Counsel undertook this matter solely on a contingent basis, with no guarantee of recovery. (Burke Decl. ¶ 11.) And unlike *In re Capital One* or other large class actions involving multiple plaintiffs and co-counsel, Class Counsel bore all of the risk of non-payment alone, without the benefit of being able to mitigate the risk by sharing the work needed to effectively litigate this action with co-counsel from other firms.[6] (*Id.*) Apparently, no other lawyer believed that bringing this case as a class action would be a worthwhile expenditure of time and resources.

Indeed, to Class Counsel's knowledge, Plaintiff is the first and only individual to pursue any action against Liberty under the TCPA for these telemarketing calls. (*Id.*) Class Counsel agreed to pursue this action on a contingent fee basis without the benefit of discovery regarding the size and ascertainability of the asserted class. Rather, Class Counsel accepted that contentious class discovery would likely be required, with not only Liberty but also then-unknown third-party participants involved in actually making the calls at issue. (Burke Decl. ¶ 12.) This differs from many other TCPA class cases, where the identity of the party making the calls is already known with some level of certainty. Class Counsel also accepted the possibility that, given the class period going back to 2009 and the fact that many telemarketing vendors reside overseas and often purge their call records on a regular basis, necessary class call and

---

[6]     It is worth noting that, for much of this litigation, Burke Law Offices, LLC was a solo law practice, such that Plaintiff's counsel, Alex Burke, was solely responsible for all work done on behalf of the class. (Burke Decl. ¶ 11.) It was only until approximately a year and a half into the litigation that the firm's new associate also became involved in the case. (*See* DE 59.)

lead data records would likely be difficult to obtain and, in fact, might have already been destroyed, potentially obliterating any ability to identify class members and ultimately obtain class-wide relief. (*Id.*) As discussed below, many of these concerns about the difficulty of obtaining necessary discovery bore themselves out in reality, and were only overcome through chance and Class Counsel's zealous perseverance.

Moreover, even assuming sufficient discovery would be obtained, Class Counsel accepted the risk that the Court would ultimately deny certification. This is a very real concern, as, for example, courts are currently divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Moreover, throughout most of this litigation, the FCC was considering numerous petitions, many of which were made by industry advocates urging the FCC to loosen prohibitions against autodialed calls like the ones at issue in this case. And although Class Counsel actively advocates to the FCC in favor of consumers, the process can be quite unpredictable. For example, on October 30, 2014, the FCC issued an order re-confirming its unequivocal prior orders that fax advertisements must contain specific language explaining how recipients can "opt-out" of receiving more faxes, but providing retroactive immunity for

11

violators that file petitions with the FCC—a wholly unexpected and incongruous result from the consumer perspective.[7] In fact, it was only until just recently, on July 10, 2015, that the FCC released a declaratory ruling clarifying relevant issues as wide-ranging as consent and the definition of an "automatic telephone dialing system" under the statute.[8]

Success, especially at the outset of this action, was by no means assured. Class Counsel accepted that litigating these and other issues risked recovering nothing for the class, Plaintiff, and counsel, and would have required significant expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would receive absolutely no compensation upon losing at summary judgment, class certification, or trial. S*ee In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035–35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green v. DirecTV, Inc.*, 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff). The risk was real. As detailed in the accompanying declaration of counsel, plaintiff lawyers lose TCPA cases all the time, both through summary judgment and through denial of class certification. *See, e.g., Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396-402 (D. Colo. 2014) (denying class certification in TCPA action); (Burke Decl. ¶ 13). Plaintiff respectfully suggests that an upward risk premium to afford Class Counsel the $1,000,000 fee cap referenced in the class notice is appropriate in this case.

---

[7]     *See* http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf.

[8]     *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

iii.  The requested fee comports with the contract between Plaintiff and
Counsel, and the typical contingency fee agreements in this Circuit.

In addition to analyzing the market price for legal services from analogous cases, courts
also may examine "actual fee contracts that were negotiated for private litigation." *Taubenfeld*,
415 F.3d at 599 (citing *Synthroid I*, 264 F.3d at 719); *see also Stumpf v. PYOD*, 12-4688, 2013 WL
6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33%
of any net recovery supports the claim that 30% of the net recovery is tied to the market.");
*Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the
judgment of the parties and their counsel where, as here, the fees were agreed to through
arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total
recovery. *See Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical
contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786
F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and
noting, with approval, contract providing for one-third contingent fee if case settled prior to
trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4
(N.D. Ill. Dec. 10, 2001) (noting that customary contingent fee is "between 33 1/3% and 40%").

Here, Plaintiff entered into a representation agreement with Class Counsel within this
typical range, but which exceeds the requested fee percentage: the contract between Mr.
Martin and Burke Law Offices, LLC calls for a 40% contingency fee.  (Burke Decl. ¶ 14.)  This
contract was entered into by Mr. Martin, who is a sophisticated and experienced TCPA class
action litigant.  *See, e.g., Martin v. Dun & Bradstreet, Inc.*, 12-00215 (N.D. Ill. Jan. 16, 2014)
(Martin, J.) (final approval of class action settlement approved, after litigation class certified).

13

Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*.

The reasonableness of the requested fee—amounting to one-third of the total settlement fund—is also supported by the numerous pre-*Redman*/*Pearson* TCPA class action fee awards based on the same calculation.[9] *See, e.g., Martin v. Dun & Bradstreet, Inc.*, 12-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third of defendants' total payout for fees); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (fees equal to one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (fees equal to one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).

---

[9]    The percentage of the total settlement fund (33%) will necessarily be somewhat less than the percentage of just the amount in fees and direct class recovery (37%), although again, *Pearson* instructs that up to 50% of the latter is presumptively reasonable.

iv.     *The quality of Class Counsel's performance, work invested, and stakes of the litigation further support the requested fee award.*

The requested fee award reasonably reflects the "market price" given the quality of Class Counsel's performance and resources invested in litigating this action, and the overall stakes of the case. *See Sutton*, 504 F.3d at 693. Despite the challenges listed above, by applying years of honed skill and experience, Class Counsel were able to obtain an outstanding result for the Settlement Class. The settlement requires Liberty to pay $3 million into a non-reversionary common fund. At a claims rate of 8%, every Settlement Class Member who fills out a simple claim form will receive a cash payment at approximately $72. The fact that Liberty was willing to pay such an amount reflects the dedication, skill, and experience of Class Counsel.

As discussed above, Class Counsel accepted considerable risk in litigating this action, pursuing costly and time-intensive litigation and first and third-party discovery without any guarantee of compensation, whatsoever. Class Counsel devoted numerous hours to investigating, litigating, and settling this case (Burke Decl. ¶ 15), exacerbated by the unique difficulties presented in this action.

For example, even at the outset of this case, Plaintiff ran into difficulty getting Liberty to identify the third parties involved in making the calls at issue, and eventually had to move to compel their identification. (DE 15, 18, 20.) Once that information was obtained, Class Counsel then began the arduous and painstaking task of locating that third party, Zee Calls, LLC, and wrenching from it necessary information about its relevant sub-vendors. (Burke Decl. ¶ 16.) Plaintiff sought records of the phone calls at issue from the sub-vendor "Executive Boutique" which, as a foreign, Philippines-based telemarketing company, was extremely difficult to track down. (*Id.*) Through extensive investigation, it was revealed that an executive of Executive

Boutique resided in New Jersey, and only occasionally commuted to Asia. (*Id.*) This revelation, which was the result of hard work (and more than a little luck) resulted in service of a subpoena on an executive at his New Jersey home. (*Id.*) Executive Boutique then hired counsel, and it was only after extensive meeting and conferring that it eventually produced the requested call detail records. (*Id.*)

However, although the call records had been obtained, Plaintiff faced further difficulty: identifying the class members to whom each call was made. Because Executive Boutique did not have such records, Plaintiff was forced to turn back to Liberty's vendor, Zee Call LLC, for this information. (*Id.*) Zee Calls' refusal to produce usable lead data identifying members of the class required Class Counsel to file another action in the Southern District of New York, *Martin v. Zee Calls LLC*, No. 15-65 (S.D.N.Y.), to compel the production of such materials. (*Id.*) TCPA plaintiffs sometimes lose motions to compel such class discovery—and are unable to proceed on a class basis as a result—even when the data is within the possession of the first-party defendant. *See, e.g., Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596–97 (S.D. Cal. 2014) (denying motion to compel production of the defendant's call data). However, through further perseverance, Class Counsel was eventually able to wrench compliance and obtain the necessary class records, which have now been used to effectuate notice under the settlement.

Class Counsel also successfully fought off Liberty's motion to dismiss, after full briefing and oral argument. (DE 11, 17-18, 23.) Counsel devoted significant time conducting numerous, arms' length negotiations with defense counsel, and negotiated successfully on behalf of the Settlement Class to effectuate the settlement currently before the Court—including through formal, in-person mediation with the Honorable Morton Denlow (Ret.) and repeated back-and-

forth with defense counsel by e-mail and phone. (Burke Decl. ¶ 17.) Counsel also spent

substantial time preparing the settlement papers and notice documents, working with the Class

Administrator, and drafting the approval motions. (*Id.*) As the above demonstrates, the instant

settlement was the result of considerable time and effort by Class Counsel, in the face of

substantial risk of receiving no compensation, whatsoever.

This case involves hundreds of thousands of Settlement Class Members who allegedly

received unlawful calls on behalf of Liberty. (*See* DE 64, at pp. 2-3.) The amount each

Settlement Class Member is individually eligible to recover is low (between $500 and $1,500

per call), and thus individuals are unlikely to file individual lawsuits. A class action is realistically

the only way that many individuals would receive any relief, and so the stakes of Plaintiff

succeeding in obtaining relief on a class-wide basis are necessarily great. In light of the number

of Settlement Class Members and the fact that they likely would not have received any relief

without the assistance of Class Counsel—in addition to the quality and extensive work

performed—the requested fee is reasonable and should be awarded.

  **B.**  <u>The Incentive Awards to the Class Representative Should Be Approved.</u>

Service awards compensating named plaintiffs for work done on behalf of the class are

routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility

of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing

that "because a named plaintiff is an essential ingredient of any class action, an incentive award

is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*,

264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to

become named representatives.").

17

Plaintiff worked with Class Counsel to investigate the case, was kept abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. (Burke Decl. ¶ 18.) Moreover, the amount requested here, $20,000, is comparable to other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award to plaintiff); *In re Southwest Airlines Voucher Litig.*, No. 11-8176, 2013 WL 4510197, *11 (N.D. Ill., Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 incentive awards in TCPA class settlement). The requested service award of $20,000 for Plaintiff Martin is reasonable and should be approved.

**IV.**     **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court grant the motion and award Class Counsel $1,000,000 in fees and $7,486.14 in actual out-of-pocket costs. Class Counsel further requests that the Court approve a service award to plaintiff Martin in the amount of $20,000.

Dated: July 15, 2015                                  Respectfully submitted,

                                                      NICHOLAS MARTIN, on behalf of
                                                      himself and others similarly situated


                                                      By:   /s/ Daniel J. Marovitch
                                                            One of Plaintiff's Attorneys

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff and the Settlement Class*

19

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on July 15, 2015, I caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>    /s/ Daniel J. Marovitch      </u>