# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of himself and others similarly situated, | ) ) ) | Case No. 1:13-cv-6923 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JTH TAX, INC. d/b/a LIBERTY TAX SERVICE, | ) ) ) | Hon. Judge Manish S. Shah Hon. Mag. Judge Sheila M. Finnegan |
| Defendant. | | |

**PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM
IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Alexander H. Burke
Daniel J. Marovitch
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff and the Settlement Class*

Plaintiff Nicholas Martin respectfully requests that the Court grant final approval to this class action settlement by: (1) approving the proposed Settlement as fair, adequate, and reasonable for the certified Settlement Class; (2) determining that adequate notice was provided to the Settlement Class; (3) granting the requested attorneys' fees, costs, and incentive award; and (4) entering an order substantially similar to the proposed order attached to the Settlement Agreement as Exhibit 4. In support of this motion, plaintiff states:

This is a Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3) ("TCPA"), case arising out of allegedly impermissible autodialed telemarketing calls to cell phones. After many months of hotly contested litigation, the parties reached a settlement that calls for a non-reversionary $3,000,000 settlement fund to be established for the benefit of the class.Tthe court granted preliminary approval to this proposed settlement on May 7, 2015. DE 69. Since then, the notice plan has been substantially implemented. The response from the Settlement Class has been overwhelmingly positive. As explained below, the claims administrator received 39,147 undisputedly valid claim forms (representing 13.45% of the class), 5,823 deficient claim forms and 426 late claim forms. Seventeen (17) exclusions have been received, and three (3) objections.

If the Court approves the Settlement as proposed, and if all deficient and late claim forms are accepted, Settlement Class Members who submitted valid claim forms would receive an estimated $36 each. For the reasons stated herein, the Court should grant final approval of this terrific Settlement.

I.  **FINAL APPROVAL SHOULD BE GRANTED.**

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). When faced with a motion for final approval of a class action settlement

under Rule 23, a court's inquiry is limited to whether the settlement is "lawful, fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." Manual for Complex Litigation (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

### A. The Settlement Is the Result of Informed, Arm's Length Negotiations.

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg & A. Conte, *Newberg on Class Actions* § 11:41 (4th ed. 2002). This settlement satisfies that test.

To reach this Settlement, the Plaintiff and Defendant JTH Tax, Inc. d/b/a Liberty Tax Service engaged in extensive arm's-length negotiations, which included an all-day, in-person mediation with the Honorable Morton Denlow (Ret.) and numerous informal negotiations between counsel for the Parties via telephone and e-mail. (Burke Decl. ¶ 12, attached as Exhibit A.) These negotiations were preceded by extensive first and third-party discovery. (Burke Decl. ¶12). This information permitted Plaintiff to negotiate on behalf of the Settlement Class, and achieve the exemplary Settlement for which approval is now sought. Because the Settlement culminated from extensive, arm's-length negotiations between experienced and well-informed counsel in total absence of collusion, the Settlement is entitled to a presumption of fairness.

### B. Settlement Class Members Received the Best Notice Practicable.

This Court has already determined that the notice plan in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. (DE 69, at p. 3.) This notice plan has been substantially implemented by independent Class Administrator, Dahl

Administration, LLC ("Dahl"), as explained herein. (Dahl Decl., Exhibit B).

Using the class records obtained by Plaintiff through discovery and in coordination with Defendant, Dahl mailed summary notice of the Settlement and a claim form to each of the approximately 289,363 Settlement Class Members, in the form previously approved by this Court. (*Id.* ¶¶ 5-8.) Because some cell phone numbers had multiple addresses in the data, in order to be assured the greatest possible reach, Dahl mailed a notice and claim form to each of the 309,033 available addresses. (*Id*. at ¶8). Mailings that were returned undeliverable were sent to any forwarding address. (*Id.* ¶¶ 9-11.) Although some records were ultimately determined to have an undeliverable address, the individual notice effort alone reached approximately 93.4% of the Settlement Class. (*Id.* at 11.) As a supplement to direct notice, the Class Administrator also created a settlement website, www.JTHTCPASettlement.com, where class members could obtain the Court-approved notice, a claim form, and a copy of the Agreement, as well as the preliminary approval order (DE 69), Class Counsel's fee petition and request for incentive award (DE 76), and other information relevant to the Settlement. (*Id.* ¶¶ 12-13.)

Settlement Class Members were also generally able to submit claims through the website, directly, (*Id.* ¶ 12.) with a limited exception. Dahl sent out a second remailing of the class notice of 25,210 pieces on August 5, 2015, of which 15,000 included incomplete claim identification numbers. (*Id.* ¶ 17.) Because claim identification numbers are required for internet claim submissions, the incorrect claim number prevented internet claim submissions until Dahl modified the coding for the website to accept the claim numbers on these notices a few days later. (*Id.* ¶ 17.) The parties designed the claim submission process to include redundancy: even though there was a temporary lapse in online submissions, at all times, class members were able to submit paper claim forms received with their notice by mail or facsimile. Moreover, a pdf copy of the claim form was, at all times, available on the settlement website. (*Id.* ¶ 18.)

The Court-approved notice, attached hereto as part of Exhibit B, provided to the Settlement Class informed them of, among other things: (1) information about the Action, the Settlement, and the release; (2) deadlines for Settlement Class Members to file a claim form, opt out of the Settlement, or object to the Settlement; (3) the amount being sought by Class Counsel in attorneys' fees and costs, and the proposed incentive award for plaintiff; and (4) the date and location of the final approval hearing. (DE 64, at pp. 51-53.) Additionally, notice was provided to all appropriate federal and state officials, pursuant to the Class Action Fairness Act of 2005, *see* 28 U.S.C. § 1715(a)(2); such notice was sent on May 7, 2015. (DE 73-1, ¶4)

Dahl received a total of 45,396 unique claim forms. Of that number, 39,147, or 13.45%, are undisputedly valid.[1] Additionally, 426 claim forms were received after the claims deadline, 400 of which would be valid but-for timeliness, and 26 of which are invalid for other reasons. There were 5,823 claim forms received that may be invalid, which breaks down as follows: 5,251 claims were submitted by a person Dahl has identified as a Class Member, except that the phone number provided on the claim form does not match the source data or the phone number field was left blank. 438 of the claims were not signed, or were signed by someone other than the Class Member. 131 claim forms listed a person *and* phone number, neither of which appear on the class list.

The parties respectfully submit that, although the Settlement Agreement, paragraph II.15 (DE 64 p. 42-43), states that deficiency letters shall be sent to claimants where the telephone number listed on the claim does not match call records, the Court should consider accepting the 5,251 claims received from class members whose names match the class list, but for whom the

---

[1] *See, e.g., Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-00248, Dkt. 109 at 5, 8; 113 (S.D. Cal. 2008) (expected claims rate in TCPA case less than 1%; expected recovery of $40); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (1.2% claims rate); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 940 (N.D. Cal. 2013), *appeal dismissed* (Dec. 3, 2013) (approving consumer class action settlement where approximately 0.41% of class submitted claims, see Dkt. 352 at 1).

cell phone number on claim forms do not match. Dahl is expected to have mailed deficiency letters to the 438 unsigned and 131 unrecognized claimants, requesting that they resubmit claims by September 2, 2015.

Given the extraordinary 13% claims rate, which would rise to approximately 15.5% if the Court were to accept the 5,251 claims mentioned above, it is clear that the notice plan approved by this Court and implemented by Dahl has successfully provided adequate notice of these proceedings and of the matters set forth therein, including the Agreement, to all parties entitled to such notice, and satisfied the requirements of Fed. R. Civ. P. 23 and due process.

### C. The Settlement Satisfies the Criteria for Final Approval.

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *Spencer v. Comserv Corp.*, No. 84-794, 1986 WL 15155, at *5 (D. Minn. Dec. 30, 1986). The Court "should not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).

In evaluating fairness, a court should consider: "(1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the amount of opposition to the settlement by affected parties; and (4) the opinion of competent counsel; and (5) the amount of discovery completed at the time of settlement." *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Applied to this case, the relevant criteria support final approval of the Settlement.

### 1. *The Strength of Plaintiff's Case Compared to the Amount of the*

5

*Settlement.*

The strength of plaintiff's case compares with the amount of the settlement, such that approval is proper. Under the Settlement, Settlement Class Members avoid all of the risks and obstacles to recovery and will receive substantial benefits, in a timely fashion. Plaintiff and Class Counsel have negotiated an excellent settlement for the Settlement Class, which requires Defendant to pay $3,000,000 into a Settlement Fund enabling each Settlement Class Member who submitted a valid claim to receive a *pro rata* amount from the non-reversionary fund, depending upon the number of claimants. (Agr. ¶ II.4.)[2]

Continued litigation, for example, ran the risk that this Court or the Seventh Circuit would refuse to certify the class because of individualized issues relating to the issue of consent. Defendant indicated to Class Counsel throughout negotiations that consent represented a significant class certification defense, and Plaintiff cannot discount the possibility that an opposition to class certification would have been successful. *Compare, e.g., Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09-5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (granting class certification), with *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (denying class certification). If JTH were able to present convincing facts to support its position, as suggested, then the Court could have possibly refused to certify the Class, leaving Plaintiff to only pursue his individual claims. Instead, "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted).

Beyond certification issues, there is also a substantial risk of losing inherent in any jury

---

[2] Funds remaining in the settlement fund due to uncashed checks will be redistributed to the Settlement Class Members who submitted valid claim forms, to the extent administratively feasible. (Agr. ¶ II.9.) If not administratively feasible (i.e., redistribution would not permit additional individual benefits of more than $1.99), the undistributed settlement funds will be distributed to a Court-approved *cy pres* recipient. *See Id.* (proposing the Electronic Privacy Information Center).

trial, or not being able to hold Defendant vicariously liable for the third-party calls made on its behalf. *See, e.g., Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 769 (N.D. Ill. 2014) (motion to dismiss TCPA case for failure to adequately plead vicarious liability). It is also possible that, despite an ultimate finding in favor of Plaintiff, the Court would significantly reduce the amount of a class-wide judgment based on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). And even if Plaintiff prevailed at trial, Defendant would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for class members. Given the significant risks of continued litigation—in addition to the extended costs and time needed to proceed with discovery and brief adversarial motions on class certification and summary judgment (let alone prepare for trial)—the risk, expense, complexity, and likely duration of further litigation support approval of the Settlement.

### 2. *The Risk, Expense, Complexity, and Likely Duration of Further Litigation.*

Final approval of a settlement is favored where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (citing *Isby*, 75 F.3d at 1199). Although plaintiff was successful in obtaining call data from the Philippines and class member identification information from a New York entity, more discovery would have been required had the proceedings continued. This would likely have had to include taking the

7

deposition of uncooperative Philippines-based autodialer manager(s), and wrenching more information from Zee Calls, which was very uncooperative. Indeed, JTH sued Zee Calls in association with the telemarketing calls that are the subject of this case. *JTH Tax, Inc. v. Constanz*, 2:14-cv-00554-RAJ-DEM (E.D.Va.). The theory of that case was that Zee calls, and its principals Mario Constanz, misrepresented to Liberty that it was a telemarketing company based in New York, when instead Zee Calls subcontracted the work to the Philippines. Absent a settlement, obtaining documents and testimony from Mr. Constanz and the rest of Zee Calls would have been nearly impossible. As it was, plaintiff had to file his own action in New York to obtain the marketing lead name/address information, in order to send notice to the class. *Martin v. Zee Calls LLC*, No. 15-65 (S.D.N.Y.).

Aside from the third party complexities, JTH vigorously defended its position and expressed every intention of continuing a spirited defense, absent a settlement, through class certification and trial. Class Counsel have a significant amount of experience in consumer class action litigation and know that any case involving a nationwide class can, and often does, lead to costly litigation that goes on for years. Although Plaintiff has thoroughly investigated the factual and legal bases for his claims and has developed substantial evidence supporting his allegations that Defendant violated the TCPA, one cannot ignore the presence of significant risks in continuing the litigation had settlement not occurred.

### 3. *Lack of Opposition to the Settlement*

More than 45,000 of the 291,000 class members submitted claim forms, 17 have excluded themselves and only 3 have objected to the settlement. This overwhelmingly positive response and lack of opposition to the Settlement favors approval. *Compare Eubank v. Pella Corp.*, 753 F.3d 718, 726 (7th Cir. 2014) (finding that class counsel had "sold out the class" and that, "[c]onsidering the modesty of the settlement, the length and complexity of the forms, and

8

the unfamiliarity of the average homeowner with arbitration, we're not surprised [with the 0.57% claims rate]"). Consumer class settlements are routinely approved with a significantly lower claim rate. *See, e.g., Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent."). The few number of exclusions, and the low number of objections, strongly suggests a finding that it is fair and reasonable, particularly in light of the extraordinary number of claims. *Marshall v. Nat'l Football League*, 787 F.3d 502, 513 (8th Cir. 2015); *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001). Indeed, in contrast to the infinitesimal percentage of objections when compared to the class size, other settlements have been approved where objecting class members represented a relatively large percentage of the class. *See, e.g., Isby*, 75 F.3d at 1200 (approving settlement over objections of 13% of the class); *Hiram Walker & Sons, Inc.*, 768 F.2d at 891 (approving settlement where 15% of the affected class objected).

Moreover, the three objections to the settlement should be overruled. The three objectors are Desireé Russell, Jacquline D. Exum and Lewis C. Taishoff, and their objections are attached hereto as <u>Exhibits C</u>, <u>D</u> and <u>E</u>.[3] Ms. Russell and Ms. Exum both object solely to the amount of money they receive under the settlement. However, a settlement is, by its very nature, a compromise. *See Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 65 (S.D.N.Y. 2003) ("Contrary to the objectors' expectations, the settlement is not a wish-list of class members that the Defendant must fulfill.... These and other objectors fail to understand that the form and

---

[3] Only an excerpt of Ms. Exum's correspondence has been attached hereto, in order to protect her private information. The entire objection, with attachments, was filed with the Court at DE 78-79. There was a fourth piece of correspondence that was received from Dennis J. Yoder, <u>Exhibit F</u>. Although Mr. Yoder's letter indicates that he objects to the settlement, the correspondence also states that "If the case is not dropped, I hereby declare my intent to exclude myself from this settlement." The parties have discussed this correspondence, and because the case has not been dropped, have determined that this letter should be considered an exclusion, rather than an objection.

amounts of benefit provided were arrived at as a result of hard-fought negotiations between experienced class action attorneys.") (citation and quotations omitted). Thus, "[i]n reviewing the substance of the objections to the proposed Settlement, this Court's role is not to determine whether the proposed settlement has achieved perfection[;] … [r]ather, ... [its] role is limited to determining whether the Settlement is fair, reasonable, and adequate."). *Mangone*, 206 F.R.D. at 227. Plaintiff's counsel agrees that it would have been preferable to obtain more money. However, given the facts and circumstances, Class Counsel firmly believes that the three million dollars obtained in this action was the highest settlement amount achievable.

Ms. Exum alleges in her correspondence that she has incurred diminished gross earnings as a result of the calls at issue, and attaches corporate organization documents from the State of Tennessee, as well as tax records and a "financial Statement" from 2012. According to Ms. Exum, these documents establish her company's lost earnings. The objection, however, does not explain what amount Ms. Exum claims to have lost as a result of the calls in this case, and no amount is readily apparent from these documents.

The class notice, which was mailed in its entirety to each class member, clearly explained the benefits of the settlement, and the risks of pursuing a case on one's own:

> If you filed your own case and prevailed, you could recover between $500 and $1,500 per violation. However, JTH Tax, Inc. would vigorously assert all available defenses, including the defense that it should not be held vicariously liable for calls made by certain third parties.

The notice sent to class members is attached to <u>Exhibit B</u>; this quote is found at "WHAT AM I GIVING UP?" The objectors were "not required to forgo what they believed to be meritorious claims—they could have opted out of the settlement to pursue their own claims, as some class members did." *Marshall*, 787 F.3d at 513. Ms. Exum apparently seeks to have it both ways: she wants to avoid the hassle, risk and cost of litigation, but at the same time recover what she

10

apparently believes is 100% of her damages. This would not be fair to the other class members. If Ms. Exum wished to try to obtain $20,000 from Liberty, she should have exercised her exclusion rights and sued on her own.

Objector Lewis C. Taishoff appears to object to class actions generally, asserting that they are "a plague on our profession and our society" and stating that he "deplore[s] the crass, money-grubbing practices that have done nothing but grow over th[e] years." (Taishoff Objection ¶¶ 4, 6.) Despite what Mr. Taishoff derogatively terms "bounty-hunting class actions," courts nationwide recognize the strong public interest need for class litigation in the consumer context—where, as in this case, the ability to realistically obtain relief for relatively small actual or statutory damages is economically foreclosed by the costs and resources needed for effective litigation.[4] *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."); *Shaver v. Trauner*, No. 97-1309, 1998 WL 35333713, at *8 (C.D. Ill. July 31, 1998) ("'Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action....The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.'") (quoting *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628, 629 (E.D. Pa. 1994)).

Mr. Taishoff's objection also dismisses, without any particularized justification, the substantial skill, money, and effort of Class Counsel in prosecuting this action on his behalf, and

---

[4] The TCPA provides for injunctive relief and statutory damages of $500 per violation, or up to $1,500 where the defendant "willfully or knowingly" violated the statute. *See* 47 U.S.C. § 227(b)(3). Additionally—and unlike many other consumer protection statutes—the TCPA does not provide for statutory fee shifting. Consequently, despite the strong protections of the statute, consumers are largely unable to obtain redress under the TCPA (or retain counsel) absent a class action or a significant number of violations.

on behalf of the hundreds of thousands of other class members, as well as the excellent result achieved; a result in which more than 50,000 class members indicated approval through submission of claims without objection. (*See, e.g.,* DE 76-1 ¶¶ 15-17.) Class Counsel here undertook representation in this matter on an entirely contingent basis, shouldering the risk of expending substantial costs and time in litigating the action without any compensation, whatsoever, in the event of an adverse ruling. (DE 76-1 ¶ 11.) The Supreme Court has long recognized the principle of attorneys taking a percentage of their client's recovery as a fee is appropriate in the class/collective context. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "[C]ourts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time[,]" *In re Dairy Farmers of Am., Inc.*, No. 09-3690, 2015 WL 753946, at *2 (N.D. Ill. Feb. 20, 2015) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)), and because "[c]ontingent fees compensate lawyers for the risk of nonpayment[,] ... [t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel[,]" *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013); *cf. Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994).

Moreover, the fee percentage sought—one-third of the Settlement Fund—has been consistently approved in numerous other consumer class cases in this Circuit and, at approximately 38% of the amount designated for fees and direct Settlement Class Member payments,[5] is presumptively reasonable under Seventh Circuit precedent. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (stating "presumption" that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to

---

[5]   $1,000,000 ÷ ($3,000,000 Settlement Fund - $321,000 estimated Class Administrator costs - $7,486.14 out-of-pocket costs - $20,000 requested incentive award) = 37.71%.

class members and their counsel"); *see generally* Counsel's Fee Petition, DE 76, at p. 14 (citing numerous TCPA class settlements awarding similar fee percentage to that requested here).[6] [7]

Likewise, while Mr. Tiashoff is similarly dismissive of Plaintiff's request for a $20,000 incentive award, his objection does not recognize that Mr. Martin pursued this case on his (and the class') behalf for nearly two years, never with any guarantee of recovery. Not only have courts in this Circuit and across the country awarded similar or greater service award amounts to named plaintiffs, including in TCPA class cases (*see, e.g.,* DE 76, at p. 24), but Plaintiff Martin has done considerably more than just "answering a phone call." (Taishoff Objection ¶ 15.) Aside from having the knowledge that the call likely violated federal law, and the gumption to call his lawyer and take the risk of filing a lawsuit, plaintiff has assisted Class Counsel through all stages of litigation, from providing information and compiling evidence to assist in counsel's pre-suit investigation, to reviewing the complaint and other court filings, to assisting in discovery and generally keeping abreast of the litigation, attending the day-long mediation and ultimately approving the proposed Settlement. (Burke Decl. ¶ 13.) Moreover, incentive awards are typical in consumer class action settlements. *Cook v. McCarron*, No. 92-7042, 1997 WL 47448, at *19 (N.D. Ill. Jan. 30, 1997) (approving $25,000 award to named plaintiff), *aff'd sub nom. Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)).

Plaintiff has opened himself up to public scrutiny as a result of his participation in this case, and without his initiative in pursuing this action on a class-wide basis, the overwhelming majority of Settlement Class Members would go without <u>any</u> relief, given the relatively small damages inherent in TCPA and other statutory consumer claims compared to the time and

---

[6] Mr. Taishoff also objects that "[t]he Notice does not disclose that the payments thereunder are taxable to the recipient, whether or not Form 1099 is issued to them." (Taishoff Objection ¶ 16.) However, "[i]t is well settled that the [class] notice is not required to provide a complete source of information[,]" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999), and the Federal Rules do not require such disclosure. *See* Fed. R. Civ. P. 23(c)(2)(B).

[7] For a more in-depth analysis of the fees and service award, please see Docket Entry 76.

resources needed to effectively pursue litigation.[8] It seems a certainty that, at any step of the way up until preliminary approval, plaintiff could have settled his *individual* claims for a substantial sum, thus "selling out" the class in exchange for quick and easy money. Mr. Martin did not do so. Instead, he pushed ahead and obtained this excellent settlement for the more than quarter million other mostly small business owners who received similar calls.[9] as a champion for the class, and Thus, in light of Plaintiff's active participation as class representative in obtaining the sizable benefits provided under the Settlement, in addition to the reasonableness of the requested award based on what has been approved in similar class actions, the Court should approve Plaintiff's request for a $20,000 incentive award in this case.

### 4. *The Opinion of Counsel.*

Where class counsel is qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See Isby*, 75 F.3d at 1200; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020 (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). Here, Class Counsel— with substantial experience in consumer and class action litigation, including under the TCPA— believes that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole. (Burke Decl. ¶ 14.)

### 5. *The Extent of Discovery Completed and the Stage of the Proceedings*

Courts consider the extent of discovery and the stage of the proceedings in determining

---

[8] *See, e.g., Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 403-04 (6th Cir. 1980) ("Precisely because the violations are technical, ... most of the members of the consumer class will not be aware of them unless they should encounter a practicing attorney versed in the Act."); *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 511 (S.D. Ind. 2007) ("Consumer claims, like those involved in this case, are commonly certified for class treatment because of the difficulty of bringing such claims individually and the common questions that are often involved in such suits.... [T]here is a strong presumption in favor of a finding of superiority when the alternative to a class action is likely to be no action at all for the majority of class members.") (citations omitted).

[9] Mr. Martin has a part-time tax preparation business. The calls he received were allegedly class members to open a Liberty Tax franchise.

whether a class settlement is fair, adequate, and reasonable. Courts regularly approve settlements achieved "where counsel have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 350, 350 (N.D. Ill. 2010) (internal quotations omitted)). Here, not only was discovery extensive, but plaintiff prevailed on a motion to compel JTH to disclose its telemarketer vendors, DE 19, and won a Fed.R.Civ.P. 12(b)(6) motion to dismiss; both before Judge Pallmeyer. DE 23. Plaintiff was forced to file a supplemental action in New York City, *Martin v. Zee Calls LLC*, No. 15-65 (S.D.N.Y.), in order to obtain class member names and addresses, and wrenched call data from a third-party telemarketing company located in the Philippines.

As such, the Settlement is the result of a thorough investigation and evaluation of Plaintiff's claims after substantial legal battles, first and third-party discovery and numerous, arm's-length settlement negotiations. (Burke Decl. ¶ 12; DE 76, at ¶¶15-17) The fact that the Settlement was achieved after discovery battles on a multitude of fronts, by well-informed, experienced counsel favors approval.

### III.     CONCLUSION

The Settlement is fair, adequate, and reasonable, and provides substantial benefits to the Settlement Class through direct monetary payments to each claimant. This is an outstanding result in light of the recoveries potentially available under the law and the risks of continued litigation, and plaintiff respectfully requests that the Court approve the Settlement in its entirety.

WHEREFORE, plaintiff respectfully requests that the Court enter an order (1) approving the proposed Settlement as fair, adequate, and reasonable for the certified Settlement Class; (2) determining that adequate notice was provided to the Settlement Class; (3) granting the requested attorneys' fees, costs, and incentive award; and (4) entering the proposed Order Finally

Approving Settlement substantially similar to that which is attached as Exhibit 4 to the Settlement Agreement.

Dated: August 31, 2015                                                  Respectfully submitted,


                                                                        /s/Alexander H. Burke

Alexander H. Burke
Daniel J. Marovitch
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff and the Settlement Class*

# CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2015, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Martin J. Bishop<br>Rebecca R. Hanson<br>REED SMITH LLP<br>10 S. Wacker Dr., 40th Floor<br>Chicago, IL 60606<br>mbishop@reedsmith.com<br>rhanson@reedsmith.com | Jason P. Britt<br>FOLEY & LARDNER LLP<br>321 N. Clark St., Suite 2800<br>Chicago, IL 60654<br>jbritt@foley.com |

*Counsel for Defendant*

A copy of the foregoing will also be provided by U.S. Mail to the following at the addresses listed in their objections, which were partially redacted in the exhibits hereto, to protect privacy interests:

| | |
|---|---|
| Lewis C. Taishoff<br>New York, NY 10038-4201 | Desireé Russell<br>Houston, TX 77242-0433 |

Jacquline D. Exum
Memphis, TN 38181

/s/Alexander H. Burke